CLARKSON, J., not sitting.
The facts as stated in the case are as follows:
1. The Legislature of North Carolina, at its session in 1921, ratified on 7 March, 1921, chapter 137 of the Public Laws of said State, entitled "An act to provide improved marketing facilities for cotton," and the said Legislature of North Carolina had, prior thereto, at its session in 1919, enacted chapter 168 of the Public Laws of said State, but chapter 137 of the Public Laws of 1921, by section 21 thereof, declared: "Chapter one hundred and sixty-eight of the Public Laws of one thousand nine hundred and nineteen, and all other laws and clauses of laws, in so far *Page 26 
only as they conflict with the provisions of this act, are hereby repealed." And said chapter 137 of the Public Laws of 1921, and chapter 168 of the Public Laws of 1919, in so far as the provisions of said last-named act do not conflict with the first-named act, are herein referred to and made a part of this agreement.
2. That pursuant to the stipulation of said chapter 137 of the Public Laws of 1921, there was established and recognized at LaGrange, in the county of Lenoir and the State of North Carolina, a cotton warehouse as a part of the North Carolina State Warehouse System, known as the LaGrange Storage Warehouse, and one Milton L. Walters was the manager of the said LaGrange Storage Warehouse, and was such manager on 10 November, 1921, the said warehouse having been duly licensed under the acts aforesaid, and the said Milton L. Walters, as local manager, pursuant to the provisions of said act, gave bond in the penal sum of $5,000, with the Globe Indemnity Company as surety, which said bond was executed on 10 November, 1921, a copy of which is hereto attached, marked "Exhibit A"; and thereafter, to wit, on 10 November, 1922, the said Milton L. Walters, pursuant to the requirements of said act, executed his manager's bond in the penal sum of $6,000, with the Globe Indemnity Company as his surety, a copy of which said bond is hereto attached, marked "Exhibit B"; both of said bonds being given to the State of North Carolina.
3. That the said Milton L. Walters was duly employed as manager of said warehouse, in accordance with the provisions of said act, and, as such manager, gave the bonds hereinbefore referred to.
4. That the said Milton L. Walters, as local manager of said warehouse, issued cotton receipts on the dates and to the persons and for the number of bales and the grade of said cotton hereinbefore stated, copies of which warehouse receipts are hereto attached, marked "Exhibits 1, 2, 3, 4, 5, 6, 7, 8, and 9": 16 January, 1922, H. M. Hardy, LaGrange, 10 bales; 16 January, 1922, H. M. Hardy, LaGrange, 2 bales; 20 February, 1922, Hugh E. Hardy, LaGrange, 3 bales; 4 March, 1922, F. Barwick Bro., LaGrange, 7 bales; 17 March, 1922, F. Barwick Bro., LaGrange, 6 bales; 17 March, 1922, P. R. Kinsey, LaGrange, 10 bales; 17 March, 1922, P. R. Kinsey, LaGrange, 10 bales; 17 March, 1922, P. R. Kinsey, LaGrange, 10 bales; 17 March, 1922, P. R. Kinsey, LaGrange, 10 bales; making a total of sixty-eight bales covered by said warehouse receipts, and the cotton represented by said warehouse receipts was duly received by said Milton L. Walters and stored in said warehouse.
5. That subsequently, to wit, on 17 May, 1923, the said Milton L. Walters borrowed $6,500 from the Murchison National Bank of Wilmington, N.C. and executed his said note to said bank, payable sixty *Page 27 
days after date, a copy of which said note is hereto attached and marked "Exhibit C," and deposited as collateral to said note the certificates for the sixty-eight bales of cotton hereinbefore in paragraph 4 stated, although at said time the said parties who had deposited said cotton for storage had received said cotton from said warehouse and had surrendered said receipts to the said Milton L. Walters, whose duty it was to cancel the same; but the said Walters, in violation of his duty, and contrary to the statute, failed to cancel said receipts, but used the said receipts as collateral security to his said note of $6,500 deposited with the Murchison National Bank of Wilmington, N.C. That the said receipts, those issued to P. R. Kinsey, were endorsed "P. R. Kinsey, LaGrange Storage Warehouse Company, by M. L. Walters, Manager." Those issued to F. Barwick Bro. were endorsed "F. Barwick Bro., per W. B. LaGrange Storage Warehouse Company, by M. L. Walters, Manager." The one issued to Hugh E. Hardy was endorsed "Hugh E. Hardy, LaGrange Storage Warehouse Company, by M. L. Walters, Manager." The two issued to H. M. Hardy were endorsed "H. M. Hardy, LaGrange Storage Warehouse Company, by M. L. Walters, Manager." That P. R. Kinsey wrote his name as an endorsement of the warehouse receipts issued to him; so did W. B. Barwick, a partner of F. Barwick Bro.; and Hugh E. Hardy and H. M. Hardy and the said Milton L. Walters stamped on the back of said receipts the name of the LaGrange Storage Warehouse Company, by the manager, and wrote his name, "M. L. Walters," above the word "Manager."
6. According to the statute, it was the duty of the said Milton L. Walters, when any cotton received on storage was delivered, to take up the warehouse receipts, cancel the same, and return them to the State Warehouse Superintendent at Raleigh, N.C. As regards the certificates or receipts issued to the parties mentioned in paragraph 4 hereof for the said sixty-eight bales, the said Walters did not do so, but fraudulently used said certificates as collateral to his own note. That the said Murchison National Bank of Wilmington, N.C. loaned in the due course of business to the said Milton L. Walters the sum of $6,500 and accepted from said Milton L. Walters as collateral the certificates above stated, without actual knowledge that the said cotton represented by said certificates had been delivered to the parties depositing the same for storage. That the said note falling due and the said bank having made demand for its payment, and the said Walters having failed to pay the same at maturity, and complaint having been made to the State Superintendent of Warehouses, an investigation was made, and it was discovered that the said sixty-eight bales of cotton had been delivered to the persons storing the same, that the warehouse receipts had been *Page 28 
surrendered to the said Milton L. Walters, local manager, and that he had fraudulently used the same as collateral to his own note.
7. That said nine warehouse receipts above referred to in paragraph 4 as "Exhibits Nos. 1-9," inclusive, were issued by said warehouse on the dates appearing thereon, under authority of North Carolina State Warehouse License No. 506, and the United States License No. 506, which said two licenses expired on 27 October, 1922, and said licenses were renewed, but that neither prior nor subsequent to 27 October, 1922, did the lawful holder or holders of any of said warehouse receipts request any renewal or extension of said receipts, and none of said warehouse receipts have ever been renewed or extended.
8. That shortly after the said note matured and was unpaid, and after the discovery that the said Walters had fraudulently used said warehouse receipts, the said Walters died.
9. Whereupon the Murchison National Bank having made demand upon the State Treasurer, B.R. Lacy, to pay the said note, which was of less amount than the value of the cotton represented by said warehouse receipts, the said B.R. Lacy paid said note, with interest thereon at six per cent, and prior thereto made demand and gave due notice to the Globe Indemnity Company, surety on the bonds of the said Milton L. Walters, of the default of the said Milton L. Walters, and the said Globe Indemnity Company denied its liability upon said bonds or either of the same.
Whereupon, upon the facts hereinbefore stated, it is submitted to the determination of the court whether the Globe Indemnity Company, as surety upon the official bond of the said Milton L. Walters, is liable to the plaintiff, and, if so, in what amount? And if it shall be determined that the said Globe Indemnity Company is liable, then judgment will be entered in favor of the plaintiff and against the Globe Indemnity Company for the amount of said liability and the costs of this controversy without action. But, on the other hand, if it shall be determined that the said Globe Indemnity Company is not liable to the plaintiff on the bonds issued as aforesaid, or to the State of North Carolina, then it shall be adjudged that the plaintiff pay the costs of this action, and that the Globe Indemnity Company go hence without day.
And the parties hereto submitting this controversy without action upon the above agreed statement of facts, sign the same, the plaintiff, B.R. Lacy, State Treasurer, by the Attorney-General of North Carolina, and the Globe Indemnity Company, by its counsel, Taliaferro Clarkson, of Charlotte, N.C.
And the bonds of local manager, Milton L. Walters, covering the period of the alleged default, is inform and terms as follows: *Page 29 
"Know all men by these presents, that we, Milton L. Walters, of the city of LaGrange, State of North Carolina, and conducting the LaGrange Storage Warehouse, a cotton warehouse at LaGrange, State of North Carolina, as principal, and the other subscribers hereto, as surety, are held and firmly bound unto the State of North Carolina in the penal sum of $5,000, for the payment of which, well and truly to be made, we bind ourselves and our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.
"Sealed with our seal and dated this 10 November, 1921.
"The conditions of this obligation are such that —
"Whereas the above-bound principal has applied to the State Warehouse Superintendent for a license for the conduct of a cotton warehouse, under "An act to provide improved marketing facilities for cotton," of 7 March, 1921 (chapter 137, Public Laws 1921), and the regulations for cotton warehouses prescribed thereunder; and
"Whereas the said principal has agreed, and does hereby agree, as a condition to the granting of said license, to comply with and abide by the terms of the said `An act to provide improved marketing facilities for cotton,' and the regulations for cotton warehouses prescribed thereunder, so far as the same may relate to him; and
"Whereas the said `An act to provide improved marketing facilities for cotton' provides that the State Warehouse Superintendent shall require each local manager applying for a license to conduct a warehouse in accordance with the terms thereof, as a condition to the granting of the license, to execute and file with the said State Warehouse Superintendent a good and sufficient bond to the State of North Carolina, in order to secure the faithful performance of his obligations as a warehouseman under the terms of the said `An act to provide improved marketing facilities for cotton,' and the said regulations for warehouses prescribed thereunder, and of such additional obligations as a warehouseman as may be assumed by him under contracts with the respective depositors of cotton in such warehouse:
"Now, therefore, if the said principal shall faithfully perform all of his obligations as a warehouseman under said act, and such additional obligations as a warehouseman arising during the period of such license, or any renewal thereof, as may be assumed by him under contracts with the respective depositors of cotton in such warehouse, then this obligation shall be null and void and of no effect; otherwise, to be and remain in full force and virtue.
"In witness whereof, the said principal and surety have executed this instrument, on the day and year above written.
 MILTON L. WALTERS, (Seal) Principal. *Page 30 
"Witnesses to the signature and seal of principal: E. V. Riggs, LaGrange, N.C.; Jno. L. Phelps, LaGrange, N.C.
 GLOBE INDEMNITY COMPANY, (Seal) Surety.
 By W. D. WILKINSON, Attorney in Fact.
(Corporate Seal)
"Witnesses to signature and seal of surety: H. H. Heafner, Charlotte, N.C.; Jno. M. Huske, Charlotte, N.C."
On these facts the court rendered judgment for plaintiff, and defendant excepted and appealed.
Chapter 137, Laws 1921, 3 C. S., secs. 4925 (a), etc., entitled "An act to provide improved marketing facilities for cotton," contains preamble as follows:
"That in order to protect the financial interests of North Carolina by stimulating the development of an adequate warehouse system for our great staple crop, cotton; in order to enable growers of cotton more successfully to withstand and remedy periods of depressed prices; in order to provide a modern system whereby cotton may be more profitably and more scientifically marketed; and in order to give this important crop the standing to which it is justly entitled as collateral in the commercial world, a cotton warehouse system for the State of North Carolina is hereby established, as hereinafter provided."
After conferring power to administer the law on the State Board of Agriculture, the statute directs that they shall, in furtherance of this power and purposes, appoint a State Warehouse Superintendent who shall enter into a bond of fifty thousand dollars ($50,000), 3 C. S., sec. 4925 (d), to guarantee the faithful performance of his duties under the law, and also assistant local managers, etc., who shall also give bond ample to safeguard the interest of the State as suggested by ordinary business experience in such cases. The act then in section 5, 3 C. S., sec. 4925 (e), in order to provide an additional guarantee fund, levies a tax of twenty-five (25) cents per bale on each bale of cotton ginned in the State until 30 June, 1922, with privilege of continual till June, 1923, and in reference to same, provides in part as follows:
"In order to provide a sufficient indemnifying or guarantee fund to cover any loss not covered by bonds hereinbefore mentioned, in order to *Page 31 
provide the financial backing which is essential to make the warehouse receipts universally acceptable as collateral, and in order to provide that a State warehouse system intended to benefit all cotton growers in North Carolina shall be supported by the class it is designed to benefit, it is hereby declared: that on each bale of cotton ginned in North Carolina during the period from the ratification of this bill until June thirty, one thousand nine hundred and twenty-two, twenty-five (25) cents shall be collected through the ginner of the bale and paid into the State Treasury, to be held there as a special guarantee or indemnifying fund to safeguard the State warehouse system against any loss not otherwise covered."
Recurring to the facts, it appears that in accordance with the provisions of said act, a storage warehouse was established at LaGrange, N.C., in 1921, with M. L. Walters as local manager, who gave bond in defendant company, for 1921-1922, those here sued on, for the faithful performance of his duties. The bond, after reciting that the principal would comply with and abide by the terms of the act, closes with the stipulation that the said principal shall faithfully perform all of his obligations as a warehouseman under said act, and such additional obligation as a warehouseman during the continuance of said license, or any renewal of same, as may be assumed by him under contracts with depositors, etc., and in 1922, renewed his said bond of like tenor, both of said bonds being given to the State. That in the spring of 1921, certain owners stored at said warehouse 68 bales of cotton and were given negotiable receipts therefor, containing among other things, and as provided by other features of the law, "That the State of North Carolina guarantees the integrity of this receipt until the expiration of the licenses, as above indicated, and upon request of the lawful holder, this receipt will be extended, provided the license are renewed, etc." That this cotton was duly delivered to the owners who surrendered their receipts to the local manager, endorsing their names thereon, and thereupon it became, and was the duty of said manager, under the act, as per agreed statement, to cancel the receipts and return same to the general superintendent at Raleigh, N.C. That instead of canceling said receipts and complying with said act, the local manager negotiated the same with the Murchison National Bank of Wilmington, to secure his individual note for $6,500.00, and delivered them to said bank as collateral for said loan, adding to the endorsement of the owners appearing thereon, the further endorsement "LaGrange Storage Warehouse by M. L. Walters, Manager." On the maturity of the note and demand made for the cotton, it was ascertained that the cotton had been delivered to the owners, and that Walters had fraudulently used same as collateral on his own note. Thereupon the bank made demand *Page 32 
on the State treasury to pay the amount of the note out of the guarantee fund, and after investigation of the facts, the demand was complied with, the money represented by the receipts was paid and present suit entered on the manager's bond as stated. It is further stated in the case agreed that the bank loaned the money to M. L. Walters in the due course of business and accepted said receipts as collateral without actual knowledge that the cotton represented by same had been delivered to the parties depositing the same for storage. This, to our minds, presents a clear breach of a specified duty on the part of the local manager, coming directly within the provisions of the bond given by defendant company as his surety, and bringing about the very results that the requirement is intended to guard against, and, in our opinion, defendant has been properly held liable for this misconduct and default of their principal. When these receipts were taken to the bank by Walters, they had on their face a guarantee of the State as to their integrity until the expiration date of the same, and providing for a renewal of such license and, as we understand the facts, the same was renewed covering the period in controversy. They were endorsed in blank by the owners and also by the warehouse through Walters, manager, no doubt required to relieve from any unpaid charges for storage. Being endorsed in blank they were negotiable by delivery, C. S., sec. 3010, and taken as collateral, they conferred upon the bank the position of holder for value to the extent of the bank's lien, C. S., 3005-3007; Smathers v.Hotel Co., 162 N.C. p. 346. The facts agreed upon showing that they were taken in due course of business for full value and without actual notice of any fraud on the part of Walters, there is nothing, in our opinion, to deprive the bank of the position of a holder in due course of the receipts. While there may have been observable irregularities on the face of the instrument, and on conditions presented, sufficient to put one on inquiry under our general statute on negotiable instruments, ch. 58, C. S., this will no longer suffice to effect the rights of a holder in due course, but there must have been either actual knowledge of the infirmity, or knowledge of such facts as to constitute bad faith on the part of the taker, C. S., 3037; Holleman v. Trust Co., 185 N.C. p. 49; Critcher v. Ballard,180 N.C. p. 112; Smathers v. Hotel Co., 162 N.C. p. 346. Not only is this true under the general law, as stated, but under the legislation more directly applicable, in section 4087, it is provided as follows:
"The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was induced by fraud, mistake, or duress to entrust the possession *Page 33 
or custody of the receipt to such person, if the person to whom the receipt was negotiated, or a person to whom the receipt was subsequently negotiated, paid value therefor, without notice of the breach of duty, or fraud, mistake or duress."
The receipts in question here come directly within the force and effect of this legislation and under its provisions, the bank is clearly entitled to claim as holder in due course, (1) the facts showing that at the time same were negotiated to the bank, they were endorsed by the owners and by the warehouse and delivered. (2) That the bank paid full value and without notice of the fraud and breach of duty on the part of Walters.
This being true, the State authorities having control of the matter were fully justified in paying off the claim out of the funds on hand. They were raised and put into the hands of the State Treasurer for the express purpose of making these receipts "universally acceptable as collateral," and to "safeguard the State Warehouse System." Moreover the tax is to provide an indemnifying fund to "cover any loss not covered by the bonds heretofore provided for," thus constituting the bonds, including that of defendant's, the primary fund from which to make good the default of their respective principals, and the State Treasurer, therefore, as custodian of these funds, in the exercise of a sound discretion, and in the line of his official duty, and for the purposes contemplated by the law, having made good the loss caused by default of defendant's principal, is entitled to be reimbursed according to stipulations of defendant's bond.
There are various irregularities suggested in the learned brief of the defendant's counsel, which might have sufficed to put a business man on inquiry, but none of them go to the integrity of the receipts as a conclusion of law, nor do they suffice to establish bad faith on the part of the bank, and under the statute applicable, they are not, in our opinion, available as a defense.
It is argued for appellant that the bank should have refused the receipts as collateral because they were placed there by Walters, and this because the law provides, that where a receipt is given for cotton belonging to the local manager, it shall specify that fact on its face. But it was not Walter's cotton originally, they were duly and regularly issued to third parties who, as stated, had endorsed and delivered them, and there is nothing in the statute which prohibits Walters from acquiring these receipts.
Again appellant's counsel insist that the facts present a case of double agency, and where the bank should have paused or declined to act because Walters was placing them as collateral for his own personal *Page 34 
obligation, citing Grady v. Bank, 184 N.C. p. 158, but in this and all other cases of like kind, so far examined, where a claimant was barred of recovery under the doctrine stated, it appeared that he took with knowledge of the fact that the principal's property was being perverted by the agent to his own use. Here, as stated, Walters offered warehouse receipts endorsed by the original owners, and the case states that the bank had no actual knowledge of Walter's default. It is further argued that before payment made the State Treasurer was warned not to pay and fully informed of the fact that the receipts were reissued by Walters in flagrant breach of his duties, and furthermore, that the defendant denied liability on the bond. But the receipts had already been negotiated for full value, and this legislation having for one of its chiefest purposes to maintain their negotiability, would indeed fall short of both its purpose and meaning if the authorities having control of the indemnity fund were compelled to stay their hand whenever they were notified not to pay and abide the results of a jury trial, whenever the question was so raised. Considering the terms and purposes of the law unless the facts would disclose a case where a claimant bank or other being an endorsee or holder for value acted it becomes the duty of the Treasurer, as heretofore stated, to make good the loss and, this loss being due to their principal's default, defendant, in collusion with the defaulting officer, or had knowledge of the fraud, as stated, is legally and primarily liable therefor.
There is no error and the judgment below is
Affirmed.
CLARKSON, J., not sitting.